UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————X

THE ANNUITY, PENSION, WELFARE AND TRAINING
FUNDS OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B, AFL-CIO BY THEIR TRUSTEES
EDWIN L. CHRISTIAN, CHRISTOPHER T. CONFREY, JOHN
CRONIN, DON DeNARDO, KENNETH KLEMENS, JR.,
JOHN F. O'HARE, DENISE M. RICHARDSON and ERNESTO
TERSIGNI,

        -and-

**COMPLAINT**

17-CIV- 8632

THE ANNUITY, WELFARE AND APPRENTICESHIP
SKILL IMPROVEMENT & SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 15, 15A, 15C & 15D, AFL-CIO, BY THEIR
TRUSTEES JAMES T. CALLAHAN, THOMAS A.
CALLAHAN, MICHAEL SALGO and DENISE M.
RICHARDSON and CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS,
BY ITS CHIEF EXECUTIVE OFFICER MICHAEL R.
FANNING,

                        Plaintiffs,

        -against-

NAVILLUS TILE, INC. d/b/a NAVILLUS CONTRACTING,
ADVANCED CONTRACTING SOLUTIONS LLC d/b/a
ACS-NY LLC, TIME SQUARE CONSTRUCTION, INC.
and HDK CONSTRUCTION, LLC,

                     Defendants.
————————————————————————————————X

      Plaintiffs THE ANNUITY, PENSION, WELFARE AND TRAINING FUNDS OF THE

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B, AFL-CIO BY

THEIR TRUSTEES EDWIN L. CHRISTIAN, CHRISTOPHER T. CONFREY, JOHN CRONIN,

DON DeNARDO, KENNETH KLEMENS, JR., JOHN F. O'HARE, DENISE M.

RICHARDSON and ERNESTO TERSIGNI (hereinafter referred to as "LOCAL 14 TRUST

FUNDS"), THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT &
SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 15, 15A, 15C & 15D, AFL-CIO, BY THEIR TRUSTEES JAMES T. CALLAHAN,
THOMAS A. CALLAHAN, MICHAEL SALGO and DENISE M. RICHARDSON (hereinafter
referred to as "LOCAL 15 TRUST FUNDS") and CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS, BY ITS CHIEF EXECUTIVE
OFFICER MICHAEL R. FANNING (hereinafter referred to as the "CPF"), by their attorneys,
BRADY McGUIRE & STEINBERG, P.C., for their Complaint, respectfully allege:

1. This is an action arising under the Employee Retirement Income Security Act of
1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") and Section 301 of the Labor
Management Relations Act of 1947, as amended, 29 U.S.C. § 185 et seq. ("LMRA") to recover
fringe benefit contributions owed to employee fringe benefit trust funds and for the breach of the
terms and conditions of collective bargaining agreements by Defendant NAVILLUS TILE, INC.
d/b/a NAVILLUS CONTRACTING ("NAVILLUS") and its alter ego entities Defendants
ADVANCED CONTRACTING SOLUTIONS LLC d/b/a ACS-NY LLC ("ACS"), TIME
SQUARE CONSTRUCTION, INC. ("TSC") and HDK CONSTRUCTION, LLC ("HDK").

## JURISDICTION

2. The subject matter jurisdiction of this Court is invoked pursuant to Sections 502
and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, along with Section 301(c) of the LMRA, 29
U.S.C. § 185(c).

3. Venue is properly laid in the Southern District of New York pursuant to Section
502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and Section 301(a) of the LMRA, 29 U.S.C. §

185(a), in that, the violations complained of herein occurred in this District and the Defendants may be found in this District.

## THE PARTIES

4.     Plaintiffs LOCAL 14 TRUST FUNDS are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA, 29 U.S.C. § 186 and are administered from an office located at 141-57 Northern Boulevard, Flushing, New York.

5.     EDWIN L. CHRISTIAN, CHRISTOPHER T. CONFREY, JOHN CRONIN, DON DeNARDO, KENNETH KLEMENS, JR., JOHN F. O'HARE, DENISE M. RICHARDSON and ERNESTO TERSIGNI are Trustees of the LOCAL 14 TRUST FUNDS and are "fiduciaries" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

6.     The LOCAL 14 ANNUITY and PENSION FUNDS are employee pension benefit plans within the meaning of Section 3(2) of the ERISA, as amended, 29 U.S.C. § 1002(2) and established for the purpose of providing retirement income to eligible participants.

7.     The LOCAL 14 WELFARE and TRAINING FUNDS are employee welfare benefit plans within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1) and established for the purpose of providing medical and skill improvement benefits to eligible participants.

8.     Plaintiffs LOCAL 14 TRUST FUNDS constitute multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).

9.     Plaintiffs LOCAL 15 TRUST FUNDS are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA, 29 U.S.C. § 186  and are administered from an office located at 44-40 11th Street, Long Island City, New York.

10.     JAMES T. CALLAHAN, THOMAS A. CALLAHAN, MICHAEL SALGO and DENISE M. RICHARDSON are Trustees of Plaintiffs LOCAL 15 TRUST FUNDS and are "fiduciaries" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

11.     The LOCAL 15 ANNUITY FUND is an employee pension benefit plan within the meaning of Section 3(2) of ERISA, as amended, 29 U.S.C. § 1002(2) and established for the purpose of providing retirement income to eligible participants.

12.     The LOCAL 15 WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS are employee welfare benefit plans within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1) and established for the purpose of providing medical, medical reimbursement, vacation and other benefits to eligible participants.

13.     Plaintiffs LOCAL 15 TRUST FUNDS constitute multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).

14.     Plaintiff CPF is a joint trustee fund established by a trust indenture pursuant to Section 302 of the LMRA, 29 U.S.C. § 186 which maintains its principal place of business at 4115 Chesapeake Street, N.W. in Washington, DC.

15.     MICHAEL R. FANNING is the Chief Executive Officer of Plaintiff CPF and is a "fiduciary" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

16.     Plaintiff CPF is an employee pension benefit plan within the meaning of Section 3(2) of ERISA, as amended, 29 U.S.C. § 1002(2) and established for the purpose of providing retirement income to eligible participants.

17.     Plaintiff CPF constitutes a multi-employer/employee benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).

18.     Upon information and belief, Defendant NAVILLUS was and still is a New York corporation with its principal place of business located at 633 Third Avenue, New York, New York.

19.     Upon information and belief, Defendant NAVILLUS was and still is a foreign corporation duly licensed to do business in the State of New York.

20.     Upon information and belief, Defendant NAVILLUS was and still is a foreign corporation doing business in the State of New York.

21.     Upon information and belief, Defendant NAVILLUS is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 301 of the LMRA, 29 U.S.C. § 185.

22.     Upon information and belief, Donal O'Sullivan is the sole owner of Defendant NAVILLUS and serves as its President and Chief Executive Officer.

23.     Upon information and belief, Defendant NAVILLUS performs concrete foundation and superstructure work on high rise building construction sites in New York City.

24.     Upon information and belief, Defendant ACS was and still is a New York corporation with its principal place of business located at 1160 Commerce Avenue, Bronx, New York.

25.     Upon information and belief, Defendant ACS was and still is a foreign corporation duly licensed to do business in the State of New York.

26.     Upon information and belief, Defendant ACS was and still is a foreign corporation doing business in the State of New York.

27.     Upon information and belief, Defendant ACS's initial filing with the New York State Department of State was on September 5, 2013.

28.     Upon information and belief, Defendant ACS is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 301 of the LMRA, 29 U.S.C. § 185.

29.     Upon information and belief, Defendant ACS performs concrete foundation and superstructure work on high rise building construction sites in New York City.

30.     Upon information and belief, and for all times relevant hereto, Donal O'Sullivan maintained one (1) or more option agreements to purchase the majority shares of Defendant ACS.

31.     Upon information and belief, Defendant TSC was and still is a New York corporation with its principal place of business located at 355 Lexington Avenue, New York, New York.

32.     Upon information and belief, Defendant TSC was and still is a foreign corporation duly licensed to do business in the State of New York.

33.     Upon information and belief, Defendant TSC was and still is a foreign corporation doing business in the State of New York.

34.     Upon information and belief, Defendant TSC's initial filing with the New York State Secretary of State was on January 17, 2007.

35.     Upon information and belief, Defendant TSC is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 301 of the LMRA, 29 U.S.C. § 185.

36.     Upon information and belief, Defendant TSC performs concrete foundation and superstructure work on high rise building construction sites in New York City.

37.     Upon information and belief, Kevin O'Sullivan is the sole owner of Defendant TSC and serves as its President.

38.     Upon information and belief, Defendant HDK was and still is a New York corporation with its principal place of business located at 355 Lexington Avenue, New York, New York.

39.     Upon information and belief, Defendant HDK was and still is a foreign corporation duly licensed to do business in the State of New York.

40.     Upon information and belief, Defendant HDK was and still is a foreign corporation doing business in the State of New York.

41.     Upon information and belief, Defendant HDK's initial filing with the New York State Secretary of State was on February 19, 2013.

42.     Upon information and belief, Defendant HDK is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 301 of the LMRA, 29 U.S.C. § 185.

43.     Upon information and belief, Donal O'Sullivan and Kevin O'Sullivan are the sole owners of Defendant HDK.

44.     Upon information and belief, and for all times relevant hereto, Defendant HDK operated as a paymaster for the work performed by the employees of Defendant TSC on concrete foundation and superstructure work on high rise building construction sites in New York City.

## BACKGROUND INFORMATION

**Collective Bargaining Agreement between Defendant NAVILLUS and the International Union of Operating Engineers Local 14-14B, AFL-CIO**

45.     International Union of Operating Engineers Local 14-14B, AFL-CIO ("Local 14") is a labor organization as defined in Section 2 of the LMRA, 29 U.S.C. § 152 et seq., having its principal office for the transaction of business located at 141-57 Northern Boulevard, Flushing, New York.

46.     At all times relevant hereto, Defendant NAVILLUS and Local 14 have been parties to a collective bargaining agreement which covered the initial period of July 1, 2006 through June 30, 2011 and which has subsequently been amended by a series of memoranda of agreement for the periods of July 1, 2011 through June 30, 2014, July 1, 2014 through June 30, 2017 and July 1, 2017 through June 30, 2020, and Defendant NAVILLUS agreed to be bound by the terms and conditions thereof as a result of its status as a member of the employers association known as the "Building Contractors Association, Inc." (collectively referred to hereafter as the "Local 14 Collective Bargaining Agreement"). See Exhibit "A" annexed hereto and made a part hereof.

47.     Pursuant to the Local 14 Collective Bargaining Agreement, all work performed by NAVILLUS in the City of New York is subject to the terms as set forth in the Local 14 Collective Bargaining Agreement.

48.     Pursuant to the terms of the Local 14 Collective Bargaining Agreement, Defendant NAVILLUS, in its individual corporate capacity, is obligated to remit, at specified rates, annuity, voluntary annuity, pension, welfare and training contributions based upon each

regular or straight and double time hour of work performed by those employees covered by the Local 14 Collective Bargaining Agreement.

49.     Pursuant to the terms of the Local 14 Collective Bargaining Agreement, all contributions and payments to Plaintiffs LOCAL 14 TRUST FUNDS, are required to be remitted though the purchase of fringe benefit stamps that are issued through Plaintiffs' office.

50.     Upon information and belief, Defendants ACS, TSC and HDK were each established for the purpose of circumventing the terms and conditions of the Local 14 Collective Bargaining Agreement.

51.     Upon information and belief, Defendant NAVILLUS has violated and breached the terms of the Local 14 Collective Bargaining Agreement by performing work in the City of New York under the names of ACS, TSC and HDK that would otherwise be covered by the Local 14 Collective Bargaining Agreement if performed under the name NAVILLUS.

52.     Article IV of the Local 14 Collective Bargaining Agreement defines the work covered under the agreement.

53.     Article VI of the Local 14 Collective Bargaining Agreement requires the remittance of fringe benefit contributions to Plaintiffs on straight and premium time paid to all employees covered under the agreement.

54.     Article VII, Section 18 of the Local 14 Collective Bargaining Agreement provides that "[t]he Employer stipulates that any firm engaging in Building Construction Work within the territory covered by this Agreement in which it has or acquires a financial interest, or any successor in interest, shall be bound by all the terms and conditions of this Agreement."

**Collective Bargaining Agreements between Defendant NAVILLUS and the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO**

55.     International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15") is a labor organization as defined in Section 2 of the LMRA, 29 U.S.C. § 152 et seq., having its principal office for the transaction of business located at 44-40 11th Street, Long Island City, New York.

### *The Local 15-15A Collective Bargaining Agreement*

56.     At all times relevant hereto, Defendant NAVILLUS and Local 15 have been parties to a collective bargaining agreement for work performed under the jurisdiction of Local 15-15A which covered the periods of July 1, 2011 through June 30, 2014 and July 1, 2014 through June 30, 2017, and which was subsequently amended by a memorandum of agreement for the period of July 1, 2017 through June 30, 2020, and Defendant NAVILLUS agreed to be bound by the terms and conditions thereof as a result of its status as a member of the employers association known as the "Building Contractors Association, Inc." (collectively referred to hereafter as the "Local 15-15A Collective Bargaining Agreement"). See Exhibit "B" annexed hereto and made a part hereof.

57.     Pursuant to the Local 15-15A Collective Bargaining Agreement, all work performed by NAVILLUS in the City of New York is subject to the terms as set forth in the Local 15-15A Collective Bargaining Agreement.

58.     Pursuant to the terms of the Local 15-15A Collective Bargaining Agreement, Defendant NAVILLUS, in its individual corporate capacity, is obligated to remit, at specified rates, annuity, pension, welfare, medical reimbursement, vacation and apprentice/training

contributions based upon each regular or straight and double time hour of work performed by those employees covered by the Local 15-15A Collective Bargaining Agreement.

59.     Pursuant to the terms of the Local 15-15A Collective Bargaining Agreement, all contributions and payments to Plaintiffs LOCAL 15 TRUST FUNDS, are required to be remitted though the purchase of fringe benefit stamps that are issued through Plaintiffs' office.

60.     Upon information and belief, Defendants ACS, TSC and HDK were each established for the purpose of circumventing the terms and conditions of the Local 15-15A Collective Bargaining Agreement.

61.     Upon information and belief, Defendant NAVILLUS has violated and breached the terms of the Local 15-15A Collective Bargaining Agreement by performing work in the City of New York under the names of ACS, TSC and HDK that would otherwise be covered by the Local 15-15A Collective Bargaining Agreement if performed under the name NAVILLUS.

62.     Article V of the Local 15-15A Collective Bargaining Agreement defines the work covered under the agreement.

63.     Article VI of the Local 15-15A Collective Bargaining Agreement requires the remittance of fringe benefit contributions to Plaintiffs on straight and premium time paid to all employees covered under the agreement.

64.     Article VIII, Section 3 of the Local 15-15A Collective Bargaining Agreement provides that "[t]he Employer stipulates that any firm engaging in building construction work within the territory covered by this Agreement in which it has or acquires a financial interest or any successor in interest, shall be bound by all the terms and conditions of this Agreement."

*The Local 15D Collective Bargaining Agreement*

65.     At all times relevant hereto, Defendant NAVILLUS and Local 15 have been parties to a collective bargaining agreement for work performed under the jurisdiction of Local 15D which covered the periods of July 1, 2011 through June 30, 2014 and July 1, 2014 through June 30, 2017, and which was subsequently amended by a memorandum of agreement for the period of July 1, 2017 through June 30, 2020, and Defendant NAVILLUS agreed to be bound by the terms and conditions thereof as a result of its status as a member of the employers association known as the "Building Contractors Association, Inc." (collectively referred to hereafter as the "Local 15D Collective Bargaining Agreement"). See Exhibit "C" annexed hereto and made a part hereof.

66.     Pursuant to the Local 15D Collective Bargaining Agreement, all work performed by NAVILLUS in the City of New York is subject to the terms as set forth in the Local 15D Collective Bargaining Agreement.

67.     Pursuant to the terms of the Local 15D Collective Bargaining Agreement, Defendant NAVILLUS, in its individual corporate capacity, is obligated to remit, at specified rates, annuity, pension, welfare, vacation and apprentice/training contributions based upon each regular or straight and double time hour of work performed by those employees covered by the Local 15D Collective Bargaining Agreement.

68.     Pursuant to the terms of the Local 15D Collective Bargaining Agreement, all contributions and payments to Plaintiffs LOCAL 15 TRUST FUNDS, are required to be remitted though the purchase of fringe benefit stamps that are issued through Plaintiffs' office.

69.     Upon information and belief, Defendants ACS, TSC and HDK were each established for the purpose of circumventing the terms and conditions of the Local 15D Collective Bargaining Agreement.

70.     Upon information and belief, Defendant NAVILLUS has violated and breached the terms of the Local 15D Collective Bargaining Agreement by performing work in the City of New York under the names of ACS, TSC and HDK that would otherwise be covered by the Local 15D Collective Bargaining Agreement if performed under the name NAVILLUS.

71.     Article IV of the Local 15D Collective Bargaining Agreement defines the work covered under the agreement.

72.     Article VII of the Local 15D Collective Bargaining Agreement requires the remittance of fringe benefit contributions to Plaintiffs on straight and premium time paid to all employees covered under the agreement.

**Defendants TSC and HDK were the Alter Egos of**
**Defendant NAVILLUS During the Sugar Hill Project**

73.     Upon information and belief, Donal O'Sullivan and Kevin O'Sullivan maintained joint ownership in Defendant TSC from the date of its incorporation on February 15, 2006 up until, through and including January of 2015.

74.     Upon information and belief, the certificate of incorporation for Defendant HDK filed with the Delaware Secretary of State on January 27, 2012 identified Donal O'Sullivan and Kevin O'Sullivan as the only members of HDK.

75.     Upon information and belief, upon execution of a LLC Agreement on or about January 30, 2012, Kevin O'Sullivan became the sole member of Defendant HDK.

76.     On April 18, 2012, Defendant TSC was awarded a subcontract to perform concrete superstructure and foundation work for a high rise building to be located at 400 West 155th Street in the Sugar Hill district of West Harlem (the "Sugar Hill Project").

77.     Upon information and belief, the bid submitted by Defendant TSC concerning the Sugar Hill Project was the identical "best and final" bid previously submitted by Defendant NAVILLUS.

78.     Upon information and belief, Defendant TSC directed the payment of wages owed to its employees through Defendant HDK which served as paymaster for TSC.

79.     Upon information and belief, HDK's operations were inseparable from TSC during the entirety of the Sugar Hill Project.

80.     Upon information and belief, upon being awarded the bid, Defendant TSC assembled a management team for the Sugar Hill Project comprised of individuals who had worked for Defendant NAVILLUS.

81.     Upon information and belief, the management team of Defendant TSC for the Sugar Hill Project included individuals who were working for Defendant NAVILLUS at the time of the Sugar Hill Project.

82.     Upon information and belief, Defendant NAVILLUS's personnel supervised the Sugar Hill Project through its completion.

83.     Upon information and belief, Defendant NAVILLUS has or acquired a financial interest in Defendant TSC.

84.     Upon information and belief, Defendant NAVILLUS has or acquired a financial interest in Defendant HDK.

85.     Upon information and belief, Defendants NAVILLUS, TSC and HDK shared the identical business purpose of serving as the concrete foundation and superstructure subcontractor on the Sugar Hill Project.

**Defendant ACS was and continues to be
the Alter Ego of Defendant NAVILLUS**

86.     Upon information and belief, in May of 2012, Eoin Moriarty ("Moriarty") was employed by Defendant NAVILLUS as a project manager.

87.     Upon information and belief, in May of 2012, Moriarty formed The Moriarty Group, LLC d/b/a TMG Contracting ("TMG Contracting") as a New York limited liability company.

88.     Upon information and belief, Moriarty formed TMG Contracting to perform concrete foundation and superstructure work on high rise building construction sites in New York City.

89.     Upon information and belief, while still employed by NAVILLUS, in April of 2013, Moriarity with the assistance of NAVILLUS's chief estimator, Peter Downes ("Downes"), submitted a bid on behalf of TMG Contracting for concrete foundation and superstructure work to general contractor Triton Construction for a high rise building to be located at 551 West 21st Street in New York City (the "21st Street Project"). TMG Contracting was awarded the contract for the 21st Street Project in or about July of 2013.

90.     Upon information and belief, in August of 2013, Moriarity left the employ of Defendant NAVILLUS to work full time for TMG Contracting but NAVILLUS continued to pay Moriarity's health insurance premiums.

91.     Upon information and belief, in May of 2013, Moriarity and Downes prepared a bid on behalf of TMG Contracting for concrete foundation and superstructure work for a high rise building to be located at 1191 Boston Road in the Bronx (the "Boston Road Project") with general contractor Mountco and was subsequently awarded the contract.

92.     Upon information and belief, on or about July 16, 2013, Moriarity formed Defendant ACS as a Delaware LLC, listing Downes as its sole member.

93.     Upon information and belief, between August of 2013 and November of 2013, Donal O'Sullivan made three (3) loans to Moriarty totaling approximately $1.8 million which were used to finance the operation of Defendant ACS.

94.     Upon information and belief, in consideration for making three (3) loans to Moriarty totaling approximately $1.8 million, Donal O'Sullivan received no less than one (1) option agreement to purchase the shares of Defendant ACS at a future date.

95.     Upon information and belief, on September 5, 2013, Moriarity registered Defendant ACS with the New York State Secretary of State, as a corporation to conduct business in the State of New York and identified Downes as the sole member of said Defendant.

96.     Upon information and believe, and at all times relevant hereto, Downes remained an employee and senior officer of Defendant NAVILLUS.

97.     Upon information and belief, on September 16, 2013, Defendant NAVILLUS submitted a bid to developer Related Companies to perform concrete foundation and superstructure work for a high rise building to be located at 205 East 92nd Street in New York City (the "92nd Street Project") which was subsequently rejected by Related Companies.

98.     Upon information and belief, thereafter, Defendant ACS submitted a bid for the same work at the 92nd Street Project.

99.     Upon information and belief, the bid submitted by Defendant NAVILLUS and the bid submitted by Defendant ACS to perform concrete foundation and superstructure work at the 92nd Street Project were identical.

100.    Upon information and belief, Donal O'Sullivan accompanied representatives of Defendant ACS to a meeting with Related Companies to review ACS's bid.

101.    Upon information and belief, some time after this meeting, Defendant ACS was awarded the contract to perform concrete foundation and superstructure work at the 92nd Street Project.

102.    Upon information and belief on November 22, 2013, Moriarity with the assistance of two (2) NAVILLUS employees, prepared a bid on behalf of Defendant ACS for concrete foundation and superstructure work for a high rise building to be located at City Point in Brooklyn (the "City Point Project") and a contract was awarded to ACS on December 9, 2013.

103.    Upon information and belief, in November of 2013, a dispute which arose at the Boston Road Project over sign-in procedures was ultimately resolved between Donal O'Sullivan on behalf of Defendants TMG Contracting and ACS and general contractor Mountco.

104.    Upon information and belief, on January 13, 2014, TMG Contracting's contract on the 21st Street Project was transferred to Defendant ACS.

105.    Upon information and belief, by the Spring of 2014, Defendant ACS's top employees, including but not limited to, its President & CEO, were all former NAVILLUS employees.

106.   Upon information and belief, and for all times relevant hereto, Donal O'Sullivan served as the *defacto* owner of Defendant ACS.

107.   Upon information and belief, since being awarded each of the contracts identified herein and continuing through Present, Defendant ACS has relied upon a management team comprised of NAVILLUS employees.

108.   Upon information and belief, Defendant NAVILLUS's owner, Donal O'Sullivan, supervised each of the projects awarded to Defendant ACS.

109.   Upon information and belief, Defendants NAVILLUS and ACS shared substantially the identical business purpose, namely, serving as concrete foundation and superstructure subcontractors on the aforementioned projects in New York City.

110.   Upon information and belief, Defendants NAVILLUS and ACS have had and continue to have substantial overlap in operations.

111.   Upon information and belief, Defendant NAVILLUS has or acquired a financial interest in Defendant ACS.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF THE LOCAL 14 COLLECTIVE BARGAINING AGREEMENT)

112.   Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 111 inclusive with the same force and effect as though more fully set forth at length herein.

113.   At all times relevant hereto, Defendant NAVILLUS was bound by the terms and conditions of the Local 14 Collective Bargaining Agreement.

114.    Article VII, Section 18 of the Local 14 Collective Bargaining Agreement mandates that Defendant NAVILLUS along with any firm it has or acquires a financial interest "shall be bound by all the terms and conditions of this Agreement."

115.    The terms and conditions of the Local 14 Collective Bargaining Agreement include the obligation to remit payment of fringe benefit contributions for all hours of work performed by employees covered under the Local 14 Collective Bargaining Agreement.

116.    The terms of payment of fringe benefit contributions are governed by Article VI of the Local 14 Collective Bargaining Agreement.

117.    At all times relevant hereto, Defendant NAVILLUS along with its alter egos, Defendants ACS, TSC and HDK have performed work as defined under Article IV of the Local 14 Collective Bargaining Agreement on projects in New York City, including but not limited to, Sugar Hill, 92nd Street, 21st Street, Boston Road and City Point, and have failed to remit payment of fringe benefit contributions to Plaintiffs LOCAL 14 TRUST FUNDS in violation of the Local 14 Collective Bargaining Agreement.

118.    As a direct and proximate result of the breach of the Local 14 Collective Bargaining Agreement by Defendants NAVILLUS, TSC, ACS and HDK, Defendants are liable to Plaintiffs LOCAL 14 TRUST FUNDS in the amount of no less than $5,000,000.00, together with accumulated interest on the unpaid and/or untimely paid principal amount due and owing, statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF THE LOCAL 15 COLLECTIVE BARGAINING AGREEMENTS)

119. Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 118 inclusive with the same force and effect as though more fully set forth at length herein.

120. At all times relevant hereto, Defendant NAVILLUS was bound by the terms and conditions of the Local 15-15A and Local 15D Collective Bargaining Agreements.

121. Article VIII, Section 3 of the Local 15-15A Collective Bargaining Agreement mandates that Defendant NAVILLUS along with any firm it has or acquires a financial interest "shall be bound by all the terms and conditions of this Agreement."

122. The terms and conditions of the Local 15-15A and Local 15D Collective Bargaining Agreements include the obligation to remit payment of fringe benefit contributions for all hours of work performed by employees covered under the Local 15-15A and Local 15D Collective Bargaining Agreements.

123. The terms of payment of fringe benefit contributions are governed by Article VI of the Local 15-15A Collective Bargaining Agreement and Article VII of the Local 15D Collective Bargaining Agreement.

124. At all times relevant hereto, Defendant NAVILLUS along with its alter egos, Defendants ACS, TSC and HDK have performed work as defined under Article IV of the Local 15-15A and Local 15D Collective Bargaining Agreements on projects in New York City, including but not limited to, Sugar Hill, 92nd Street, 21st Street, Boston Road and City Point, and have failed to remit payment of fringe benefit contributions to Plaintiffs LOCAL 15 TRUST

FUNDS and CPF in violation of the Local 15-15A and Local 15D Collective Bargaining Agreements.

125.    As a direct and proximate result of the breach of the Local 15-15A and Local 15D Collective Bargaining Agreements by Defendants NAVILLUS, TSC, ACS and HDK, Defendants are liable to Plaintiffs LOCAL 15 TRUST FUNDS and CPF in the amount of no less than $5,000,000.00, together with accumulated interest on the unpaid and/or untimely paid principal amount due and owing, statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (BREACH OF ERISA OBLIGATIONS — LOCAL 14 TRUST FUNDS)

126.    Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 125 inclusive with the same force and effect as though more fully set forth at length herein.

127.    The failure of Defendant NAVILLUS, along with its alter egos Defendants TSC, ACS and HDK to remit payment of the required fringe benefit contributions to Plaintiffs LOCAL 14 TRUST FUNDS for all hours of work covered as defined by Article IV of the Local 14 Collective Bargaining Agreement and performed by those employees employed at projects in New York City, including but not limited to, Sugar Hill, 92nd Street, 21st Street, Boston Road and City Point, is a violation of Section 515 of ERISA, 29 U.S.C. § 1145 which requires that employers pay fringe benefit contributions in accordance with the terms and conditions of the applicable collective bargaining agreement.

128.    At all times material herein, Defendants NAVILLUS, TSC, ACS and HDK remain delinquent in making the proper contributions and have failed to pay any portion of the contributions owed to Plaintiffs LOCAL 14 TRUST FUNDS as detailed above.

129.    Section 502 of ERISA, 29 U.S.C. § 1132 provides that upon a finding of an employer's violation of Section 515 of ERISA, 29 U.S.C. § 1145, the Court shall award to the Plaintiff Trust Funds: (a) the amount owed in unpaid fringe benefit contributions; together with (b) interest on the unpaid contributions computed at the rate provided for under the plaintiff trust fund's plan, or if none, at the rate set forth in the United States Internal Revenue Code at 26 U.S.C. § 6621; (c) statutory damages; (d) reasonable attorneys' fees; and (e) the costs and disbursements of the action.

130.    Accordingly, as a direct and proximate result of the breach of the Local 14 Collective Bargaining Agreement by Defendants NAVILLUS, TSC, ACS and HDK, and as a result thereof having violated Section 515 of ERISA, 29 U.S.C. § 1145, said Defendants are liable to Plaintiffs LOCAL 14 TRUST FUNDS in the amount of no less than $5,000,000.00, together with accumulated interest on the unpaid and/or untimely paid principal amount due and owing, statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (BREACH OF ERISA OBLIGATIONS — LOCAL 15 TRUST FUNDS & CPF)

131.    Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 130 inclusive with the same force and effect as though more fully set forth at length herein.

132.   The failure of Defendant NAVILLUS, along with its alter egos Defendants TSC,

ACS and HDK to remit payment of the required fringe benefit contributions to Plaintiffs LOCAL

15 TRUST FUNDS and CPF for all hours of work covered as defined by Article IV of the Local

15-15A and Local 15D Collective Bargaining Agreements and performed by those employees

employed at projects in New York City, including but not limited to, Sugar Hill, 92nd Street, 21st

Street, Boston Road and City Point, is a violation of Section 515 of ERISA, 29 U.S.C. § 1145

which requires that employers pay fringe benefit contributions in accordance with the terms and

conditions of the applicable collective bargaining agreements.

133.   At all times material herein, Defendants NAVILLUS, TSC, ACS and HDK remain

delinquent in making the proper contributions and have failed to pay any portion of the

contributions owed to Plaintiffs LOCAL 15 TRUST FUNDS and CPF as detailed above.

134.   Section 502 of ERISA, 29 U.S.C. § 1132 provides that upon a finding of an

employer's violation of Section 515 of ERISA, 29 U.S.C. § 1145, the Court shall award to the

Plaintiff Trust Funds: (a) the amount owed in unpaid fringe benefit contributions; together with

(b) interest on the unpaid contributions computed at the rate provided for under the plaintiff trust

fund's plan, or if none, at the rate set forth in the United States Internal Revenue Code at 26

U.S.C. § 6621; (c) statutory damages; (d) reasonable attorneys' fees; and (e) the costs and

disbursements of the action.

135.   Accordingly, as a direct and proximate result of the breach of the Local 15-15A

and Local 15D Collective Bargaining Agreements by Defendants NAVILLUS, TSC, ACS and

HDK, and as a result thereof having violated Section 515 of ERISA, 29 U.S.C. § 1145, said

Defendants are liable to Plaintiffs LOCAL 15 TRUST FUNDS and CPF in the amount of no less

than $5,000,000.00, together with accumulated interest on the unpaid and/or untimely paid principal amount due and owing, statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

**WHEREFORE**, Plaintiffs THE ANNUITY, PENSION, WELFARE AND TRAINING FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B, AFL-CIO demand judgment on the First Cause of Action that it be adjudged and declared that Defendants ADVANCED CONTRACTING SOLUTIONS LLC d/b/a ACS-NY LLC, TIMES SQUARE CONSTRUCTION, INC. and HDK CONSTRUCTION, LLC are the alter egos of Defendant NAVILLUS TILE, INC. d/b/a NAVILLUS CONTRACTING and all named Defendants are jointly and severally liable for the payment of no less than $5,000,000.00 in fringe benefit contributions as determined to be due and owing, together with prejudgment interest thereon.

**WHEREFORE**, Plaintiffs THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 15, 15A, 15C & 15D, AFL-CIO and CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS demand judgment on the Second Cause of Action that it be adjudged and declared that Defendants ADVANCED CONTRACTING SOLUTIONS LLC d/b/a ACS-NY LLC, TIMES SQUARE CONSTRUCTION, INC. and HDK CONSTRUCTION, LLC are the alter egos of Defendant NAVILLUS TILE, INC. d/b/a NAVILLUS CONTRACTING and all named Defendants are jointly and severally liable for the payment of no less than $5,000,000.00 in fringe benefit contributions as determined to be due and owing, together with prejudgment interest thereon.

**WHEREFORE**, Plaintiffs THE ANNUITY, PENSION, WELFARE AND TRAINING FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B, AFL-CIO demand judgment on the Third Cause of Action that it be adjudged and declared that Defendants ADVANCED CONTRACTING SOLUTIONS LLC d/b/a ACS-NY LLC, TIMES SQUARE CONSTRUCTION, INC. and HDK CONSTRUCTION, LLC are the alter egos of Defendant NAVILLUS TILE, INC. d/b/a NAVILLUS CONTRACTING and all named Defendants are jointly and severally liable for the payment of fringe benefit contributions in the amount of no less than $5,000,000.00, together with:

a. Prejudgment interest, computed at the plan rate or the applicable United States Treasury rate from the date on which the first payment was due on the total amount owed by Defendants , in accordance with Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B);

b. Statutory damages in accordance with Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C);

c. Attorneys' fees, costs and disbursements in accordance with Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D); and

d. Such other and further relief as the Court may deem just and proper in accordance with Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E).

**WHEREFORE**, Plaintiffs THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 15, 15A, 15C & 15D, AFL-CIO and CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS demand judgment on the Fourth Cause of Action that it be adjudged and declared that Defendants ADVANCED CONTRACTING SOLUTIONS LLC d/b/a ACS-NY LLC, TIMES SQUARE

CONSTRUCTION, INC. and HDK CONSTRUCTION, LLC are the alter egos of Defendant

NAVILLUS TILE, INC. d/b/a NAVILLUS CONTRACTING and all named Defendants are

jointly and severally liable for the payment of fringe benefit contributions in the amount of no

less than $5,000,000.00, together with:

      a.    Prejudgment interest, computed at the plan rate or the applicable United States Treasury rate from the date on which the first payment was due on the total amount owed by Defendants , in accordance with Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B);

      b.    Liquidated damages in accordance with Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C);

      c.    Attorneys' fees, costs and disbursements in accordance with Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D); and

      d.    Such other and further relief as the Court may deem just and proper in accordance with Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E).

Dated: Tarrytown, New York
       November 7, 2017

                Yours, etc.

                BRADY McGUIRE & STEINBERG, P.C.

By:    James M. Steinberg (JS-3515)
       Joseph H. Green (JG-8339)
       Attorneys for Plaintiffs
       303 South Broadway, Suite 234
       Tarrytown, New York 10591
       (914) 478-4293